**STATE of North Dakota,
Plaintiff/Appellee,**

v.

**Joseph M. BRUDE, Defendant/Appellant.**

Cr. No. 490.

Supreme Court of North Dakota.

Oct. 10, 1974.

Overby & Stokes, Cooperstown, for defendant/appellant.

M. C. Hiaasen, State's Atty., and Bryan C. Selland, Asst. State's Atty., Minnewaukan, and Norbert H. Lange, Sp. Asst. Atty. Gen., State Highway Dept., Bismarck, for plaintiff/appellee.

JOHNSON, Judge.

This case involves interpretation of the statutes governing motor vehicle operators' licenses. The defendant was convicted of operating a motor vehicle while his license or driving privilege was revoked. An order of revocation had been issued by the Safety Responsibility Division of the State Highway Department on May 6, 1971, based upon a charge of driving while under the influence of intoxicating liquor. The order, served by mail upon the defendant, provided for revocation of license and driving privilege for a stated period of sixty days, with license or driving privilege returned upon compliance with statute and regulations after a request to the highway department and proof of financial responsibility. The defendant apparently took no action regarding reinstatement of his driving privilege. He was charged on October 28, 1973, with driving while his driving privilege was revoked. Defendant appeals a conviction on this charge, contending that the revocation had expired or was of no effect on the date of the offense charged.

Defendant's counsel argues that the effective period of revocation was only sixty days and that under Section 39–06–23, N.D.C.C., the highway commissioner may not revoke licenses for a period in excess of one year.

■ This argument appears to ignore the distinction between "suspension" and "revocation" as set forth under the licensing statutes.

"1. Suspension means that the driver's license and privilege to drive a motor vehicle on the public highways are temporarily withdrawn but only during the period of such suspension.

"2. Revocation means that the driver's license and privilege to drive a motor vehicle on the public highways are terminated and shall not be renewed or restored, except that an application for a new license may be presented and acted upon by the commissioner after the expiration of the period of revocation, which period shall not be less than thirty days nor more than one year."

Section 39–06–23, subsections 1 and 2, N.D.C.C.

The distinction between suspension and revocation under these sections is that a suspension is effective for a specified period while a revocation continues until such time as a new application has been submitted and a license issued.

■ Other courts examining the license revocation statutes have also concluded that "until the privilege of operating a motor vehicle has been restored by a new application and license, a privilege previously revoked remains revoked." People v. Lopez, 143 Colo. 523, 354 P.2d 491, 492 (1960); Rickard v. District of Columbia, 214 A.2d 476 (D.C.App.1965); People v. Higgins, 87 Cal.2d Supp. 938, 197 P.2d 417 (1948); People v. Suddoth, 52 Ill.App.2d 355, 202 N.E.2d 120 (1964). This holding has been applied even though the term of the driver's license might have previously expired. Rickard v. District of Columbia, *supra.* If there has been any limitation of revocation to a specific period or term it has been based upon specific statutory language.[1] Ennis v. Garrett, 279 N.C. 612, 184 S.E.2d 246 (1971).

■ The phrase "period of revocation," as used in Chapter 39–06 of the North

1. " 'Revocation' shall mean that the licensee's privilege to drive a vehicle is terminated *for the period stated in the order of* *revocation.*" North Carolina Statutes, Section 20–6. (Emphasis added.)

Dakota Century Code, means a period during which driving privileges are revoked and no application for a reinstatement may be made. Revocation will, however, continue after this period if the license is not reinstated by the licensing authority. If the individual driver wishes the revocation terminated he must make application and satisfy the licensing authority as to his qualification to drive a motor vehicle on our highways. See Section 39–06–36, N.D.C.C.

While other statutes deal with the manner of revocation and continuation of license revocation (see e. g., Section 39–16.-1–07, N.D.C.C.), the defendant was properly prosecuted under Section 39–06–42, N.D.C.C., which establishes a criminal penalty for driving while under suspension or revocation. It has been argued that a more strict construction of these statutes defining revocation should be made. However, the license revocation or suspension proceeding is not a criminal matter but is an exercise of the police power for the protection of the public. See State v. Sinner, 207 N.W.2d 495, 499 (N.D.1973); Anderson v. Commissioner of Highways, 267 Minn. 308,

126 N.W.2d 778 (1964). See also, Conaway v. Thompson, 78 N.W.2d 400 (N.D.1956); Thompson v. Thompson, 78 N.W.2d 395 (N.D.1956). If a more strict interpretation is to be applied, it should be applied to the criminal statutes establishing offenses in the operation of motor vehicles.

While the motor vehicle has become an integral part of our economic and social fabric, it is still a demanding and dangerous instrumentality. The motor vehicle exacts a tremendous toll in terms of death, disability, damage and demands upon our natural resources.[2] The privilege of using such an instrumentality cannot be granted promiscuously and cannot be granted without limitations as to continuation of the privilege.

The judgment is affirmed.

ERICKSTAD, C. J., and KNUDSON, PAULSON and VOGEL, JJ., concur.

2. According to official reports, during the year 1973 there were 208 deaths, 4,924 personal injuries, 11,365 instances of property damage, and an estimated economic loss of $82,735,000, resulting from motor vehicle accidents within the State of North Dakota. North Dakota Accident Facts, 1973, Traffic Engineering Division, State Highway Department, pp. 3, 15, 21. During the same period 488,573 motor vehicles were registered within the state and 374,554,000 gallons of petroleum were taxed for use on North Dakota highways. 1974 Highway Statistics, North Dakota, Planning & Research Division, State Highway Department, p. 29.