502 S.E.2d 190

**STATE of West Virginia ex rel. C.E. "Sam" HALL, Prosecuting Attorney for Boone County, Petitioner,**

v.

**Honorable E. Lee SCHLAEGEL, Jr., Judge of the Circuit Court of Boone County, and Charles Gregory Brown, Respondents.**

No. 24581.

Supreme Court of Appeals of West Virginia.

Submitted Jan. 13, 1998.

Decided April 2, 1998.

Richard N. Riffe, Assistant Prosecuting Attorney for Boone County, Madison, and Jacquelyn I. Custer, Senior Assistant Attorney General, Charleston, for Petitioner.

Robert Lee White, Madison, for Respondent Brown.

WORKMAN, Justice:

Petitioner C.E. "Sam" Hall, Prosecuting Attorney of Boone County, seeks to prohibit the enforcement of an order entered by the Circuit Court of Boone County on October 9, 1997, which dismissed the State's information against Respondent Charles Gregory Brown for operating a motor vehicle during a period when his operator's license had been revoked for driving under the influence ("DUI"). The lower court's decision to dismiss the criminal charge filed against Mr. Brown was based on the fact that the six-month period of license revocation provided for by West Virginia Code § 17C–5A–2 (1996) had expired at the time the criminal charge was filed. Through this writ of prohibition, Petitioner asks this Court to determine that a driver whose license has been revoked because of a DUI offense who has not complied with the statutorily-prescribed steps for reissuance of his operator's licence can be prosecuted for driving with a revoked license under West Virginia Code § 17B–4–3(b) (1996) even after the six-month period of revocation [1] has elapsed. After fully considering the merits of this issue, we grant the requested writ of prohibition.

## I. FACTS

Mr. Brown was arrested for DUI on December 28, 1990. Pursuant to the provisions of West Virginia Code § 17C–5A–2(i),[2] the Commissioner of Motor Vehicles issued an administrative order on January 23, 1991, revoking Mr. Brown's privilege to drive for a period of six months. Mr. Brown was apprehended on March 17, 1997, in response to a call that a person driving a maroon Volkswagen had fired a weapon into a Logan County residence and fled by means of such vehicle. Having learned through a routine check with the Department of Motor Vehicles ("DMV") that Mr. Brown's license had never been reinstated following his arrest for DUI in 1990, the arresting officers charged him with the criminal offense of driving while his license was revoked for DUI under West Virginia Code § 17B–4–3(b).

Mr. Brown filed a motion to dismiss the criminal charge brought against him under West Virginia Code § 17B–4–3(b), asserting that the predicate element of license revocation was nonexistent as the six-month revocation period had expired in July 1991. Petitioner argued that an operator's license continues to be revoked despite the passage of the statutory period of revocation until such time as the individual completes the prescribed steps for license reinstatement. Based on its view of the statutory scheme, Petitioner contended that the State had properly charged Mr. Brown with a violation of West Virginia Code § 17B–4–3(b). The lower court found Mr. Brown's contention persuasive and dismissed the charge of driv-

---

1. Under West Virginia Code § 17B–4–3(b),

[a]ny person who drives a motor vehicle on any public highway of this state at a time when his or her privilege to do so has been lawfully revoked for driving under the influence of alcohol, controlled substances or other drugs, or for driving while having an alcoholic concentration in his or her blood of ten hundredths of one percent or more, by weight, or for refusing to take a secondary chemical test of blood alcohol content, shall, for the first offense, be guilty of a misdemeanor, and, upon conviction thereof, shall be confined in jail for six months and in addition to such mandatory jail sentence, shall be fined not less than one hundred dollars nor more than five hundred dollars....

2. This provision provides that:

If the commissioner finds by a preponderance of the evidence that the person did drive a motor vehicle while under the influence of alcohol, controlled substances or drugs, or did drive a motor vehicle while having an alcoholic concentration in the person's blood of ten hundredths of one percent or more, by weight, or finds that the person, being an habitual user of narcotic drugs or amphetamine or any derivative thereof, did drive a motor vehicle, ... the commissioner shall revoke the person's license for a period of six months....

W.Va.Code § 17C–5A–2(i).

ing while license revoked for DUI. Petitioner seeks a writ of prohibition from this Court in connection with the circuit court's ruling.

## II. DISCUSSION

█ This matter of first impression presents the issue of whether a driver whose license has been revoked for DUI remains subject to prosecution for driving while his license is revoked for DUI after the statutory period of revocation has elapsed but before the driver has complied with the statutorily-prescribed steps for reissuance of his driver's license. As with all issues of statutory construction, we must first determine whether the language at issue presents any ambiguity. *See* Syl. Pt. 2, *State v. Elder,* 152 W.Va. 571, 165 S.E.2d 108 (1968) (holding that "[w]here the language of a statute is clear and without ambiguity the plain meaning is to be accepted without resorting to the rules of interpretation").

The statute authorizing license revocation for DUI provides that "[i]f ... the commissioner [of Motor Vehicles] shall determine that ... at the time the person was arrested he or she was under the influence of alcohol ... the commissioner shall make and enter an order revoking the person's license to operate a motor vehicle in this state." W.Va. Code § 17C–5A–1(c) (1996). For a first offense DUI, the length of the revocation period is six months. W.Va.Code § 17C–5A–2(i). The operative statutory language pertaining to the criminal offense of driving while license is revoked for DUI applies to "[a]ny person who drives a motor vehicle on any public highway of this state *at a time when his or her privilege to do so has been lawfully revoked for driving under the influence of alcohol....*" W.Va.Code § 17B–4–3(b) (emphasis supplied).

The conditions for reissuance of a license revoked for first offense DUI are set forth in West Virginia Code § 17C–5A–3(b)(2) (1996):

The commissioner ... shall prescribe the necessary terms and conditions for the reissuance of the license to operate a motor vehicle in this state revoked under this article ... which shall include successful completion of the educational, treatment or

rehabilitation program, subject to the following:

(A) When the period of revocation is six months, the license to operate a motor vehicle in this state shall not be reissued until (i) at least ninety days have elapsed from the date of the initial revocation, during which time the revocation was actually in effect, (ii) the offender has successfully completed the program, (iii) all costs of the program and administration have been paid, and (iv) all costs assessed as a result of a revocation hearing have been paid.

Mr. Brown was fully apprised of these conditions as the order of license revocation stated that his license to drive in West Virginia was revoked for a period of "[s]ix (6) months and thereafter until you successfully complete the Safety and Treatment Program described in the attached documents and all costs assessed as a result of any revocation hearing have been paid. When all *mandatory requirements* have been met, you may be eligible for reinstatement in ninety (90) days." The order further specified that the reinstatement fee was fifteen dollars and indicated that "**LICENSE CANNOT BE REINSTATED UNDER ANY CIRCUMSTANCES UNTIL YOU HAVE SUCCESSFULLY COMPLETED THE SAFETY AND TREATMENT PROGRAM!!**" Mr. Brown does not dispute Petitioner's representation that he has neither enrolled in any safety and treatment program nor paid the required fees for license reinstatement.

In addition to the statutory provisions, we must also consider the definitions provided for terms included in the statutes under consideration. Two terms relevant to the present inquiry are "revocation" and "suspension." Under the motor vehicle statutory scheme, "[r]evocation means that the driver's license and privilege to drive a motor vehicle on the public highways are terminated and shall not be renewed or restored, except that an application for a new license may be presented and acted upon by the division after the expiration of at least one year after the date of revocation, except as otherwise provided in section two [§ 17C–5A–2], article

five-a, chapter seventeen-c of this code[.]"[3] W.Va.Code § 17B–1A–1(q) (1996). In contrast, "[s]uspension means that the driver's license and privilege to drive a motor vehicle on the public highways are temporarily withdrawn but only during the period of such suspension." W.Va.Code § 17B–1A–1(p).

 Finding no ambiguity presented by the language of the applicable statutes, we conclude that the current statutory dilemma is actually a question of how the legislature intended the administrative revocation provisions to interrelate with the criminal offense of driving while license revoked for DUI. As we explained in syllabus point 3 of *Smith v. State Workmen's Compensation Comm'r*, 159 W.Va. 108, 219 S.E.2d 361 (1975), "[s]tatutes which relate to the same subject matter should be read and applied together so that the Legislature's intention can be gathered from the whole of the enactments." We have also recognized that:

> "A statute should be so read and applied as to make it accord with the spirit, purposes and objects of the general system of law of which it is intended to form a part; it being presumed that the legislators who drafted and passed it were familiar with all existing law, applicable to the subject matter, whether constitutional, statutory or common, and intended the statute to harmonize completely with the same and aid in the effectuation of the general purpose and design thereof, if its terms are consistent therewith." Syllabus Point 5, *State v. Snyder*, 64 W.Va. 659, 63 S.E. 385 (1908).

Syl. Pt. 1, *State ex rel. Simpkins v. Harvey*, 172 W.Va. 312, 305 S.E.2d 268 (1983), *superseded by statute on other grounds as stated in State ex rel. Hagg v. Spillers*, 181 W.Va. 387, 382 S.E.2d 581 (1989).

 The purpose of the administrative sanction of license revocation, as we stated in *Shell v. Bechtold*, 175 W.Va. 792, 338 S.E.2d 393 (1985), "is the removal of persons who drive under the influence of alcohol and other intoxicants from our highways." *Id.* at 796, 338 S.E.2d at 396. This objective of removing substance-affected drivers from our

roads in the interest of promoting safety and saving lives is consistent "with the general intent of our traffic laws to protect the innocent public." *Id.* Petitioner argues that these objectives would be furthered by requiring a driver to fulfill the statutory requirements for reissuance of his/her license before he/she is no longer subject to the offense of driving while license revoked for DUI. We observe that the Legislature's inclusion of a separately-designated criminal offense for driving while license revoked for DUI is indicative of the societal importance attached to removing such motorists from our roadways. *See* W.Va.Code § 17B–4–3(b).

In resolving whether license revocation continues past the six-month period provided by West Virginia Code § 17C–5A–2(i) or whether it summarily expires at the end of the designated period, we find it helpful to consider the decisions of other jurisdictions that have addressed this precise issue. In the apposite case of *State v. Brude*, 222 N.W.2d 296 (N.D.1974), a driver whose license had been revoked for DUI was arrested two years later and charged with driving while his license was revoked. Like Mr. Brown in this case, the driver contended that his revocation "had expired or was of no effect on the date of the offense charged." *Id.* at 297. Contrasting the statutory distinction between a suspension and a revocation under statutory definitions that parallel those provided in West Virginia Code § 17B–1A–1(p), (q), the North Dakota court explained that a "suspension is effective for a specified period while a revocation continues until such time as a new application has been submitted and a license issued." *Id.* Based on this distinction, the court in *Brude* ruled that "until the privilege of operating a motor vehicle has been restored by a new application and license, a privilege previously revoked remains revoked." *Id.* at 296, syl. pt. 2, in part; *accord State v. Bettenhausen*, 460 N.W.2d 394 (N.D.1990).

---

**3.** West Virginia Code § 17C–5A–2(i) reduces the period of time prior to which a driver cannot apply for the reissuance of his/her operator's license from one year to six months for a first offense DUI.

Similarly, the Supreme Court of Minnesota concluded in *State v. Stankey*, 302 N.W.2d 347 (Minn.1981), that when a driver's license is revoked because of driving while under the influence, the license continues to be revoked for purposes of the criminal charge of aggravated driving while under the influence until such time as the new operator's license is issued. Although the Minnesota Legislature has amended its statutory corollary to West Virginia Code § 17B–4–3(b) to provide that a driver who operates a vehicle "before his driver's license or driver's privilege has been reinstated following its cancellation, suspension or revocation"[4] commits the offense of aggravated driving, the Minnesota Supreme Court reached the same result when the statutory language paralleled that of West Virginia Code § 17B–4–3(b).[5] 302 N.W.2d at 348.

Focusing on the relationship between the DUI administrative and criminal statutes, the court in *State v. Doyen*, 185 Wis.2d 635, 518 N.W.2d 321 (Ct.App.1994), expressly rejected the notion that "the operating privilege is automatically reinstated after the lapse of a specific time period" following a suspension for DUI.[6] *Id.* at 642–43, 518 N.W.2d 321; *accord* Joseph B. Conder, Annotation, *Validity, Construction, Application, And Effect of Statute Requiring Conditions, In Addition to Expiration of Time, For Reinstatement of Suspended or Revoked Driver's License*, 2 ALR 5th 725, 737 (1992) (observing that "most courts have agreed that a license is not automatically restored by the expiration of the time of suspension set forth in the statute"). Instead, the suspension continues until the driver meets the specified statutory conditions and complies with the court's alcohol assessment order required by Wisconsin law. 185 Wis.2d at 643, 518 N.W.2d 321. Thus, failure to meet

the conditions for reinstatement of a driver's operator's privileges has the effect of continuing indefinitely the administrative suspension that results from a DUI offense. *See id.* The *Doyen* court reasoned that, because the license revocation or suspension resulted from a DUI offense, a suspension period necessarily continues until the conditions specified by statute for reinstatement of an operator's privilege following a DUI offense are fulfilled. Based on this statutory correlation, the *Doyen* court concluded that an arrest that occurs after a DUI suspension but prior to the reinstatement of the operator's privilege comes within the statutory purview of the offense of operating a motor vehicle while operating privilege is suspended for DUI. 185 Wis.2d at 642–43, 518 N.W.2d 321.

Of concern to the court in *People v. Lessar*, 629 P.2d 577 (Colo.1981), was the consideration that the Legislature could not have intended to permit drivers to escape prosecution for Colorado's version of West Virginia Code § 17B–4–3 just because the temporal period of administrative suspension had expired. The court, in examining whether the expiration of the three-month period of license revocation for failure to submit to a chemical test prevented the individual from being prosecuted for driving while his license was denied, commented:

> [T]he right to licensing does not automatically spring to life at the end of the period of ineligibility, as if the order never had been entered. Rather, *the completion of the term of revocation or denial merely makes the driver eligible to apply for a new license. The issuance of a new license is expressly conditioned upon compliance with the terms of the denial order. Until the driver complies with those terms*

<hr/>

**4.** This amendment was a codification of the holding in *State v. Wicks*, 258 N.W.2d 598 (Minn. 1977), that a license revoked for DUI continues to be revoked within the meaning of the aggravated driving while under the influence statute until such time as a new license is issued. *See id.* at 601. The statute had previously stated the elements of the offense of aggravated driving while under the influence as "[a]ny person who operates a motor vehicle ... upon the highways in this state ... while the driver's license or driver's privilege is cancelled, suspended or re-

voked...." *Stankey*, 302 N.W.2d at 348 (quoting Minn.Stat. § 171.245 (1976)).

**5.** *See supra* note 4.

**6.** Although Wisconsin law designates the offense of driving under the influence as OWI, or operating while intoxicated, we substitute the parallel statutory acronym of DUI for purposes of our analysis. *See* Wis.Stat.Ann. § 346.63(1) (1991).

*and obtains a new license, his driving status as "revoked" or "denied" continues....*

The construction employed by the district court would vitiate the public safety purposes of the Uniform Traffic Code by permitting a person to drive upon the public streets and highways after an order of denial and nevertheless escape prosecution ... merely because the act of driving occurred after the three month period of ineligibility for licensing had expired. We reject such construction as unreasonable. Before a person against whom an order of denial has been entered is entitled to operate a motor vehicle, he must reapply for a new license at the end of the period of denial, pay the restoration fee required ..., file proof of financial responsibility ... and must be in receipt and possession of the new license. Unless and until these conditions are satisfied, his driving status as "denied" continues and he is subject to prosecution ... for driving under denial. Since the defendant did not take these steps after the termination of the three month period of denial had expired, he was properly convicted by the county court of driving under denial.

629 P.2d at 580 (emphasis supplied and citations omitted); *accord Colorado Dep't of Revenue, Motor Vehicle Div'n v. Brakhage,* 735 P.2d 195 (Colo.1987) (holding that three-month suspension for exceeding the statutorily permissible number of "points" would continue until individual complied with statutory requirements of paying restoration fee and providing proof of insurance).

Like the court in *Lessar,* we cannot conclude that the Legislature intended to protect individuals like Mr. Brown from prosecution for driving while license revoked for DUI if the temporal period of revocation has expired but the conditions for reissuance of an operator's license have not been met. The statutory scheme set forth in this State's motor vehicle laws clearly requires that once an operator's license has been revoked administratively, he must fulfill certain conditions before his license will be reinstated. W.Va.Code § 17C–5A–3(b). The mere passage of the statutorily-provided period of rev-

ocation is not a triggering event for reissuance of an operator's license. *See id.* The definitional distinction between "revocation" and "suspension" makes clear that unlike a "suspension" which automatically expires at the end of the designated period, a revocation requires the act of acquiring a new license to extinguish the status of an operator's license as revoked. *Cf.* W.Va.Code § 17B–1–1(p) with W.Va.Code § 17B–1–1(q). Thus, the failure of an individual to meet the conditions prescribed by West Virginia Code § 17C–5A–3(b) for license reinstatement continues that person's driving status as revoked indefinitely.

 Our statutory scheme requires the conclusion that until such time as a driver whose license has been revoked for driving under the influence has complied with the statutorily-prescribed steps for reissuance of his driver's license set forth in West Virginia Code § 17C–5A–3(b), he/she remains subject to prosecution for driving while his/her license is revoked for driving under the influence pursuant to West Virginia Code § 17B–4–3(b), notwithstanding the fact that the statutory period of revocation has elapsed. As the court observed in *Brude,*

> While the motor vehicle has become an integral part of our economic and social fabric, it is still a demanding and dangerous instrumentality. The motor vehicle exacts a tremendous toll in terms of death, disability, damage and demands upon our natural resources. The privilege of using such an instrumentality cannot be granted promiscuously and cannot be granted without limitation as to continuation of the privilege.

222 N.W.2d at 298 (footnote omitted).

Based on the foregoing, we grant the requested writ of prohibition.

Writ granted.