558 S.E.2d 319

**STATE of West Virginia, Plaintiff Below, Appellee,**

v.

**Ottis Ray EUMAN, Defendant Below, Appellant.**

**No. 29700.**

Supreme Court of Appeals of West Virginia.

Submitted Nov. 6, 2001.

Decided Nov. 28, 2001.

Concurring Opinion of Chief Justice McGraw Jan. 11, 2002.

Darrel V. McGraw, Jr., Esq., Attorney General, Allen H. Loughry, II, Esq., Senior Assistant Attorney General, Charleston, West Virginia, Attorneys for Appellee.

Brian C. Dempster, Esq., Williamstown, West Virginia, Attorney for Appellant.

PER CURIAM:

The appellant, Ottis Ray Euman, appeals the September 21, 2000 order of the Circuit Court of Wood County which denied his motion to dismiss a citation for driving a motor vehicle while his privilege to do so was revoked. He believes two prior convictions for driving under the influence of alcohol (DUI) in the State of Ohio cannot support the West Virginia citation. We disagree.

## I.

## FACTS

The appellant was driving a 1974 Chevrolet Camaro in the Parkersburg area on April 1, 2000. He was stopped by Officer Todd A. Davis for squealing his tires. Officer Davis learned that the appellant's Ohio operator's license was revoked for driving under the influence of alcohol. He had two DUI convictions, one in 1988 and one in 1993. The appellant did not seek reinstatement of his driving privileges. Officer Davis issued the appellant a citation for "[u]nlawfully operat[ing] a motor vehicle in this state when his privilege to do so has been lawfully revoked for Driving Under the Influence[ ]" in violation of W.Va.Code § 17B–4–3.

A bench trial was held in magistrate court on June 21, 2000. The magistrate determined the appellant was guilty of the charge and sentenced him to six months in jail and fined him $100. The appellant appealed to circuit court, requesting that the charge be dismissed. He argued that a foreign license revocation cannot support a charge in West Virginia for driving while revoked for DUI. The circuit court held a hearing on August 18, 2000. Upon hearing arguments from counsel, the court denied the motion and imposed the same sentence. The circuit court affirmed the magistrate court decision

in an order entered on September 21, 2000. A stay of execution pending appeal was granted. It is from this order that the appellant appeals.

## II.

### STANDARD OF REVIEW

█ The appellant requests that we construe W.Va.Code § 17B–4–3 in his favor and remand for an order of dismissal. "Where the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review." Syllabus Point 1, *Chrystal R.M. v. Charlie A.L.*, 194 W.Va. 138, 459 S.E.2d 415 (1995).

## III.

### DISCUSSION

On appeal, the appellant makes essentially the same allegation he argued below. He contends the circuit erred by finding that a foreign license revocation can be used in West Virginia to support a charge for driving while revoked for DUI. He admits W.Va. Code § 17B–4–3 makes it a crime to drive a motor vehicle in this state with a suspended or revoked license but believes W.Va.Code § 17B–4–3(b) does not apply to him because, unlike W.Va.Code § 17B–4–3(a), it does not contain the words "by this state or any other jurisdiction[.]" He maintains that only West Virginia DUI convictions can be used to support a conviction for driving while revoked for DUI in this jurisdiction. The State argues that the appellant incorrectly interprets W.Va.Code § 17B–4–3(b) to recognize only in-state convictions for DUI. We agree.

W.Va.Code § 17B–4–3 (1999) states in pertinent part:

(a) Except as otherwise provided in subsection (b) or (d) of this section, any person who drives a motor vehicle on any public highway of this state at a time when his or her privilege to do so has been lawfully suspended or revoked *by this state or any other jurisdiction* is, for the first offense, guilty of a misdemeanor and, upon conviction thereof, shall be fined not less than one hundred dollars nor more than five

hundred dollars; for the second offense, the person is guilty of a misdemeanor and, upon conviction thereof, shall be confined in jail for a period of ten days and, in addition to the mandatory jail sentence, shall be fined not less than one hundred dollars nor more than five hundred dollars; for the third or any subsequent offense, the person is guilty of a misdemeanor and, upon conviction thereof, shall be confined in jail for six months and, in addition to the mandatory jail sentence, shall be fined not less than one hundred fifty dollars nor more than five hundred dollars. (Emphasis added).

(b) Any person who drives a motor vehicle on any public highway of this state *at a time when his or her privilege to do so has been lawfully revoked for driving under the influence of alcohol,* controlled substances or other drugs, or for driving while having an alcoholic concentration in his or her blood of ten hundredths of one percent or more, by weight, or for refusing to take a secondary chemical test of blood alcohol content, is, for the first offense, guilty of a misdemeanor and, upon conviction thereof, shall be confined in jail for six months and in addition to the mandatory jail sentence, shall be fined not less than one hundred dollars nor more than five hundred dollars; for the second offense, the person is guilty of a misdemeanor and, upon conviction thereof, shall be confined in jail for a period of one year and, in addition to the mandatory jail sentence, shall be fined not less than one thousand dollars nor more than three thousand dollars; for the third or any subsequent offense, the person is guilty of a felony and, upon conviction thereof, shall be imprisoned in the penitentiary for not less than one year nor more than three years and, in addition to the mandatory prison sentence, shall be fined not less than three thousand dollars nor more than five thousand dollars. (Emphasis added).

We do not believe the appellant's interpretation of this code section was envisioned by the Legislature. Such an interpretation would allow every individual who has received one or multiple DUI conviction(s) in

other states which results in a revocation of the privilege to drive in another jurisdiction to lawfully operate a vehicle on West Virginia's roads and highways. Meanwhile, an individual whose driving privilege has been suspended under subsection (a) because of traffic tickets issued "by this state or any other jurisdiction" would not be allowed to lawfully operate a vehicle on West Virginia's roads and highways. Surely the Legislature did not intend to prohibit those whose license are revoked for speeding from driving on our highways while at the same time permit those whose license are revoked for drunk driving to continue to drive.

■ We recognize that license revocation laws are intended to protect the innocent public. This Court previously stated, "The purpose of the administrative sanction of license revocation is the removal of persons who drive under the influence of alcohol and other intoxicants from our highways." *Shell v. Bechtold,* 175 W.Va. 792, 796, 338 S.E.2d 393, 396 (1985) (citation omitted) (per curiam). In *Shell,* the question presented was whether a municipal court conviction for DUI could be used to enhance the administrative sanction of driver's license revocation. Shell possessed a West Virginia driver's license and was twice convicted for DUI, once in municipal court in Huntington, West Virginia, and once in Florida. Florida notified West Virginia that Shell's driving privilege was revoked for six months. The commissioner of the West Virginia DMV issued an order revoking Shell's driver's license for ten years. Shell appealed. On appeal, this Court held that "[a] DUI conviction in another state is ground for license revocation." *Id.,* 175 W.Va. at 795, 338 S.E.2d at 395 (citations omitted).

■ Moreover, West Virginia is a member of the Driver License Compact, W.Va.Code §§ 17B–1A–1 to 2. "Under the Driver License Compact, each state is required to treat a conviction in a sister state in the same manner as it would an in-state conviction." 7A Am.Jur.2d *Automobiles and Highway Traffic* § 154 (1997). This premise was stressed in *Shell* wherein the Court stated, "As a member of the interstate Driver License Compact and by virtue of Article IV, *Code,* 17B–1A–1, the DMV is required to treat out-of-state convictions in the same manner as it would in-state convictions." *Shell,* 175 W.Va. at 795, 338 S.E.2d at 395–96. We must, therefore, treat the Ohio convictions as if they were in-state convictions.[1]

The appellant acknowledges that West Virginia DUI convictions would support the charge. He nonetheless avers that if the Legislature intended DUI convictions from other jurisdictions to support a conviction for driving while revoked in West Virginia, subsection (b) would repeat the words which are found in subsection (a), that is, "revoked by this state or any other jurisdiction[.]" One could certainly argue the opposite viewpoint; if the Legislature intended only West Virginia DUI convictions to support this charge, subsection (b) would begin with the phrase, "Any person who drives a motor vehicle on any public highway of this state at a time when his or her privilege to do so has been lawfully revoked for driving under the influence of alcohol" in West Virginia.

■ The Legislature chose to use neither phrase but clearly stated that a person who drives a vehicle on the public highways of this state when the privilege to do so has been lawfully revoked for driving under the influence of alcohol is guilty of driving on a revoked license. That is exactly what the appellant did. He drove a vehicle on a public highway in this state when his privilege to do so had been lawfully revoked for DUI.

■ It is commonly understood that "[w]here the language of a statute is clear and without ambiguity the plain meaning is

---

1. Consistent with this Court's holding in *State v. Hulbert,* 209 W.Va. 217, 544 S.E.2d 919 (2001), as with out-of-state domestic violence convictions, we emphasize that out-of-state DUI convictions may only be used as predicate offenses for charging a defendant with driving while revoked for DUI when the foreign statute under which the defendant was convicted contains essentially the same elements as those required for an offense under W.Va.Code § 17B–4–3(b). When the foreign statute contains different or additional elements, it must be shown that the factual predicate upon which the DUI conviction was obtained would have supported a conviction under West Virginia law.

to be accepted without resorting to the rules of interpretation." Syllabus Point 2, *State v. Elder*, 152 W.Va. 571, 165 S.E.2d 108 (1968). Also,

> " ' "A statute should be so read and applied as to make it accord with the spirit, purposes and objects of the general system of law of which it is intended to form a part; it being presumed that the legislators who drafted and passed it were familiar with all existing law, applicable to the subject matter, whether constitutional, statutory or common, and intended the statute to harmonize completely with the same and aid in the effectuation of the general purpose and design thereof, if its terms are consistent therewith." Syllabus Point 5, *State v. Snyder*, 64 W.Va. 659, 63 S.E. 385 (1908).' Syl. Pt. 1, *State ex rel. Simpkins v. Harvey*, 172 W.Va. 312, 305 S.E.2d 268 (1983), *superseded by statute on other grounds as stated in State ex rel. Hagg v. Spillers*, 181 W.Va. 387, 382 S.E.2d 581 (1989)." Syl. Pt. 2, *State ex rel. Hall v. Schlaegel*, 202 W.Va. 93, 502 S.E.2d 190 (1998).

Syllabus Point 11, *Rice v. Underwood*, 205 W.Va. 274, 517 S.E.2d 751 (1998).

We do not believe the Legislature intended to exclude DUI convictions from other states and allow only West Virginia DUI convictions to support convictions for driving while revoked for DUI. The fact that the appellant's license was revoked by our sister state of Ohio is of no consequence. We must treat the conviction in the same manner as it would be treated if the appellant had instead lost the privilege to drive in West Virginia. There is no question if that were the case, he would be convicted of driving while revoked for DUI. The appellant is guilty of a misdemeanor. The circuit court committed no error by affirming the magistrate court decision.

For the foregoing reasons, the judgment of the Circuit Court of Wood County is affirmed.

Affirmed.

McGRAW, Chief Justice, concurring:

(Filed Jan. 11, 2002)

I agree with the majority that affirmance in this case is appropriate because W. Va. Code § 17B–4–3(b) (1999) "clearly state[s] that a person who drives a vehicle on the public highways of this state when the privilege to do so has been lawfully revoked for driving under the influence of alcohol is guilty of driving on a revoked license." I write separately merely to clarify the reach of the canon of statutory construction implicitly relied upon by the appellant.

Appellant's argument in this case is that since the Legislature specifically provided in subsection (a) of W. Va.Code § 17B–4–3 that an out-of-state driver's license suspension or revocation could serve as a predicate for the offenses set forth in that subsection, but did not so provide with respect to the offenses contained in subsection (b), it must therefore have intended to prohibit use of non-West Virginia revocations in the latter context. Although not expressly stated, appellant is relying upon the canon of statutory construction *expressio unius est exclusio alterius*, which in this context instructs that "explicit direction for something in one provision, and its absence in a parallel provision, implies an intent to negate it in the second context." *Clinchfield Coal Co. v. FMSHRC*, 895 F.2d 773, 779 (D.C.Cir.1990).

This Court has previously recognized that "[i]n the interpretation of statutory provisions the familiar maxim *expressio unius est exclusio alterius*, the express mention of one thing implies the exclusion of another, applies." Syl. pt. 3, *Manchin v. Dunfee*, 174 W.Va. 532, 327 S.E.2d 710 (1984); *see also State ex rel. Riffle v. Ranson*, 195 W.Va. 121, 128, 464 S.E.2d 763, 770 (1995) ("*Expressio unius est exclusio alterius* (express mention of one thing implies exclusion of all others) is a well-accepted canon of statutory construction.") (citing *Brockway Glass Co. Inc., Glassware Div. v. Caryl*, 183 W.Va. 122, 394 S.E.2d 524 (1990); *Dotts v. Taressa J.A.*, 182 W.Va. 586, 591, 390 S.E.2d 568, 573 (1990)). The *expressio unius* maxim is premised upon an assumption that certain omissions are intentional. As the Court explained in *Riffle*, "[i]f the Legislature explicitly limits applica-

tion of a doctrine or rule to one specific factual situation and omits to apply the doctrine to any other situation, courts should assume the omission was intentional; courts should infer the Legislature intended the limited rule would not apply to any other situation." 195 W.Va. at 128, 464 S.E.2d at 770.

Importantly, *expressio unius* is not a rule of law, but merely an aid to construing an otherwise ambiguous statute. *See* 2A Norman J. Singer, *Sutherland Statutory Construction* § 47:23, at 315 (6th ed.2000). And even in this limited capacity courts have frequently admonished that "[t]he maxim is to be applied with great caution and is recognized as unreliable." *Director, Office of Workers' Compensation Programs v. Bethlehem Mines Corp.*, 669 F.2d 187, 197 (4th Cir.1982). The feebleness of the rule stems from the very nature of the inference that underlies it. As one commentator stated, the *expressio unius* maxim "is a questionable one in light of the dubious reliability of inferring specific intent from silence." Cass R. Sunstein, *Law and Administration after Chevron*, 90 Colum. L.Rev.2071, 2109 n.182 (1990); *see also* Max Radin, *Statutory Interpretation*, 43 Harv. L.Rev. 863, 873–74 (1930) (calling the canon "one of the most fatuously simple of logical fallacies, the 'illicit major,' long the *pons asinorum* of schoolboys") (citation omitted). Thus, as the Seventh Circuit Court of Appeals succinctly observed, "[n]ot every silence is pregnant; *expressio unius est exclusio alterius* is therefore an uncertain guide to interpreting statutes . . . ." *Illinois Dep't of Public Aid v. Schweiker*, 707 F.2d 273, 277 (7th Cir.1983) (citations omitted).

What appellant is attempting to do in this case is create an ambiguity in subsection (b) of § 17B–4–3 where none in fact exists. In this case, the text of subsection (b) makes it an offense for a person to drive a motor vehicle when his or her driver's license has been revoked for, among other things, driving under the influence of alcohol. Subsection (b) uses the broad phrase "lawfully revoked" without further limitation as to the

source of such action, meaning that the statute may clearly be understood to apply to both in- and out-of-state license revocations. Consequently, in the absence of an ambiguity in the statutory text, the *expressio unius* maxim simply does not apply.[1] *See State ex rel. Van Nguyen v. Berger*, 199 W.Va. 71, 76–77, 483 S.E.2d 71, 76–77 (1996) (stating that "because [the penal statute] is not vague or ambiguous, there is no need to construe the statute, and we need not turn to the rules of statutory construction, including the maxim of *expressio unius est exclusio alterius* ").

I therefore readily concur with the majority opinion in this case.

---

1. The rule of lenity or strict construction of penal statutes, which has also been argued by appellant in this case, is likewise inapplicable. *See, e.g., State v. Green*, 207 W.Va. 530, 538 n. 13, 534 S.E.2d 395, 403 n. 13 (2000) ("Because we find the statutory text to be unambiguous . . ., we do not consider the rule of lenity.") (citation omitted).