# IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**FILED**

**May 1, 2026**

ASHLEY N. DEEM, CHIEF DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**FORREST O. MILLER,**
**Plaintiff Below, Petitioner**

**v.) No. 25-ICA-272**    (Cir. Ct. Marshall Cnty. Case No. CC-25-2020-C-48)

**EQT TGHL EXPLORATION II, LLC and**
**STONE HILL MINERALS HOLDINGS, LLC,**
**Defendants Below, Respondents**

**and**

**ELLEN SCHILLING, J. THOMAS VOLTZ,**
**ANDREW VOLTZ, JACK M. FOREMAN,**
**JULIE F. SPRINGWATER, KLOVA A. MORRIS,**
**JOHN PAUL RICHMOND ICARD, VICKI L. WOOD,**
**WILLIAM LITMAN, AARON D. LITMAN,**
**MELISSA M. GIBSON, AND SHARON T. WILLIAMS,**
**Third-Party Defendants Below, Respondents**

## MEMORANDUM DECISION

Petitioner Forrest O. Miller appeals the Circuit Court of Marshall County's June 3, 2025, order granting summary judgment to Respondents EQT TGHL Exploration II, LLC ("EQT") and Stone Hill Minerals Holdings, LLC ("Stone Hill") and declaring that Stone Hill and non-participating Respondents Ellen Schilling, J. Thomas Voltz, Andrew Voltz, Jack M. Foreman, Julie F. Springwater, Klova A. Morris, John Paul Richmond Icard, Vicki L. Wood, William Litman, Aaron D. Litman, Melissa M. Gibson, and Sharon T. Williams are the owners of severed mineral interests. EQT and Stone Hill filed a joint response.[1] Mr. Miller filed a reply.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2024). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds no substantial question of law and no prejudicial error. For

---

[1] Mr. Miller is represented by Samuel H. Simon, Esq. EQT is represented by Timothy M. Miller, Esq., and Tiffany M. Arbaugh, Esq. Stone Hill is represented by Matthew P. Heiskell, Esq.

these reasons, a memorandum decision affirming the circuit court's June 3, 2025, order is appropriate under Rule 21 of the West Virginia Rules of Appellate Procedure.

The parcel at issue in this case consists of 93 acres in Marshall County and the surface is mapped and assessed under Tax Map Parcel ID No. 05-0011-0015-0000 (the "Subject Tract"). By Deed dated August 19, 1903 (the "Severance Deed"), James S. Henderson conveyed to George E. Henderson all interests he owned in the Subject Tract except for an undivided one-half interest in the oil and gas underlying the Subject Tract. Accordingly, after the execution of the Severance Deed, James S. Henderson owned an undivided one-half interest in the oil and gas underlying the Subject Tract.

Before the execution of the Severance Deed, the entirety of the Subject Tract, including the surface and the underlying minerals, was assessed under one entry in the land books identified as "Long Run," with a "Value of Land" listed as "$5" per acre. The undisputed facts conclusively show that, after the Severance Deed, the severed one-half oil and gas interest remained assessed with the surface. Following the Severance Deed, James S. Henderson's one-half oil and gas interest was not entered into the land books for assessment. Instead, the land books had the same "Long Run" entry, with the same "Value of Land" for the same amount of "$5" per acre, in the name of "G.E. Henderson," with a notation "From J. S. Henderson." The "Long Run" land book entry in the name of George E. Henderson from 1904 forward included one hundred percent of the surface and one hundred percent of the minerals underlying the Subject Tract. During the period from 1903 to 1931, the land books never contained an entry for assessment of property owned by James S. Henderson.

The parties do not dispute that James S. Henderson never had his one-half oil and gas interest separately entered on the land books and assessed following the 1903 severance, or that the assessment in the name of George E. Henderson was the only assessment covering the subject property. It is further undisputed that the assessed value of the land as a whole did not change following the 1903 severance of James S. Henderson's one-half oil and gas interest.

The Subject Tract changed ownership again when it was conveyed to S. P. Miller by tax deed dated April 13, 1931 (the "1931 Tax Deed"). The interest conveyed by the 1931 Tax Deed included the entirety of the Subject Tract, including one hundred percent of the surface and one hundred percent of the minerals underlying the Subject Tract.

By Deed dated July 29, 1943, S.P. Miller conveyed the Subject Tract to Earl Roberts and Elizabeth Mona Rine, excepting and reserving a one-half interest in the oil and gas underlying the Subject Tract (the "S.P. Miller 1943 Deed"). The 1943 land books have marked out the S. P. Miller assessment and include a handwritten comment "to Earl Roberts et al. DB 228, page 30," referencing the S.P. Miller 1943 Deed. The 1944 land

books contain an assessment in the name of "ROBERTS EARL ET AL," for "93" Fee Acres, with a Value per Acre of "$5" and the note "From SP Miller DB 228 P30," referencing the S.P. Miller 1943 Deed. S.P. Miller, a/k/a Samuel Pierce Miller, died testate on December 16, 1952. Under his Will dated February 16, 1939, S.P. Miller devised the remainder of his estate to his children. Pursuant to subsequent conveyances and transfers by the heirs of, and successors in interest to, S.P. Miller, Stone Hill and the non-participating Respondents became the owners of S.P. Miller's one-half interest in the oil and gas.[2]

From 1943 through 2013, the surface owner of the Subject Tract was assessed with the same fee interest in the Subject Tract (93 Acres, Long Run), and there was no other assessment related to, or purporting to cover, an interest in the oil and gas underlying the Subject Tract until 2013, ostensibly derived from the 2013 Tax Deed purportedly based on delinquent taxes for the years 1903-2013 in the name of "Henderson, J.S. Heirs."

By Deed dated August 23, 2013, G. Russell Rollyson, Jr., as Deputy Commissioner of Delinquent and Nonentered Lands of Marshall County, West Virginia, purportedly conveyed to Mr. Miller the following interest: "Cert. No. 252615, described as one-half of mineral under 93 ac parcel on Map 5, Parcel 15, District 5, Franklin District" (the "2013 Tax Deed"). The 2013 Tax Deed is the result of delinquent taxes returned in the name of "Henderson, J.S. Heirs and" for tax year(s) 1903 to 2013.

Mr. Miller filed his complaint on April 20, 2020, against EQT[3] asserting claims for trespass and declaratory judgment regarding an oil and gas lease termination. EQT asserted a counterclaim against Mr. Miller for breach of contract or breach of express warranty. Stone Hill intervened as a party defendant and filed a counterclaim and a third-party complaint to quiet title naming the following individuals as third-party defendants, Ellen Schilling, Andrew Voltz, J. Thomas Voltz, Jack M. Foreman, Julie F. Springwater, Klova A. Morris, John Paul Richmond Icard, Vicki L. Wood, William Litman, Aaron D. Litman, Melissa M. Gibson, and Sharon T. Williams. Stone Hill's quiet title claim seeks a

---

[2] The circuit court detailed the percentages of ownership among these parties: a. Ellen Schilling: 0.8644%; b. Andrew Voltz: 0.8644%; c. J. Thomas Voltz: 5.1874%; d. Jack Foreman: 28.4374%; e. Julie Springwater: 14.375%; f. Klova Morris: 1.25%; g. John Paul Richmond Icard: 1.25%; h. Vicki Wood: 1.25%; i. William Litman: 1.25%; j. Aaron Litman: 1.25%; k. Melissa Gibson: 1.875%; l. Sharon Williams: 1.6666%; and m. Stone Hill 40.479%.

[3] Mr. Miller actually filed his complaint against TH Exploration II, LLC. However, it is undisputed that EQT is TH Exploration II, LLC's successor-in-interest. The circuit court substituted EQT for TH Exploration II, LLC in an order entered on November 16, 2023. For simplicity, we refer to this entity simply as "EQT" throughout.

declaratory judgment that it and the third-party defendants own an undivided one-half interest in the oil and gas underlying the Subject Tract. As discussed, Stone Hill and the third-party defendants' title claim stems from the one-half oil and gas interest reserved in the S.P. Miller 1943 Deed.

On April 15, 2025, EQT and Stone Hill filed a joint motion for summary judgment and Mr. Miller filed a competing summary judgment motion. The circuit court entered the June 3, 2025, Order Granting Defendants' Joint Motion for Summary Judgment and Dismissal of Plaintiff's Complaint With Prejudice. In the June 3, 2025, order, the circuit court applied the common law presumption that severed mineral estates not separately assessed for taxes are deemed to be assessed with their corresponding surface interests and determined that the delinquent taxes underpinning the 2013 Tax Deed was an invalid double assessment. Because the 2013 Tax Deed is based on an invalid double assessment, the circuit court determined that it is void *ab initio*. Thus, Mr. Miller acquired no interest in the subject oil and gas through the void 2013 Tax Deed. Mr. Miller's appeal of the June 3, 2025, order followed.

We review the order granting summary judgment de novo. *See* Syl. Pt. 1, *Painter v. Peavy*, 192 W. Va. 189, 451 S.E.2d 755 (1994). ("A circuit court's entry of summary judgment is reviewed *de novo*."); Syl. Pt. 3, *Cox v. Amick*, 195 W. Va. 608, 466 S.E.2d 459 (1995) ("A circuit court's entry of a declaratory judgment is reviewed *de novo*."). With this standard in mind, we turn to the parties' argument.

On appeal, Mr. Miller asserts three assignments of error. First, Mr. Miller asserts that the circuit court erroneously applied the common law presumption that severed mineral estates not separately assessed for taxes are deemed assessed with their corresponding surface interests. Mr. Miller argues that this common law presumption is no longer valid because of changes made in 1994 by the West Virginia Legislature to Chapter 11A of the West Virginia Code. EQT and Stone Hill contend that the 1994 changes to Chapter 11A do not alter the common law presumption. We agree with EQT and Stone Hill.

The Supreme Court of Appeals of West Virginia ("SCAWV") explains that when there is a severance of title between a surface and mineral estate, it is "conclusively presumed, in absence of anything to the contrary, that the minerals are still charged with the surface." *United Fuel Gas Co. v. Hays Oil & Gas Co.*, 111 W. Va. 596, 600, 163 S.E. 443, 445 (1932). Regarding the effect of statutory changes on common law, it is well settled that the common law, if not repugnant to the constitution of this state, continues as the law of this state unless it is altered or changed by the Legislature. *See* Syl. Pt. 3, *State ex rel. Van Nguyen v. Berger*, 199 W. Va. 71, 483 S.E.2d 71 (1996) (internal citations omitted); Syl. Pt. 8, *Thomas v. McDermitt*, 232 W. Va. 159, 751 S.E.2d 264 (2013). "The common law is not to be construed as altered or changed by statute, unless legislative intent to do so

be plainly manifested." *Van Nguyen*, 199 W. Va. at 73, 483 S.E.2d at 73, Syl. Pt. 4 (internal citations omitted).

Upon review, we find that Mr. Miller fails to identify any provision in Chapter 11A demonstrating the Legislature's clear intention to supplant the presumption that nonentered severed mineral estates are deemed assessed with the surface. Mr. Miller cites West Virginia Code § 11A-3-37 (1994) in support of his argument. The first sentence of West Virginia Code § 11A-3-37 concerns the duty of a landowner to have their land entered and charged for taxation. *See* W. Va. Code § 11A-3-37. This duty existed before the 1994 changes and its inclusion in West Virginia Code § 11A-3-37 does not show the Legislature's clear intention to supersede the presumption.[4] The second sentence of section 11A-3-37 provides that land that remains nonentered and not charged with taxes for five successive years shall be subject to the authority and control of the auditor. *Id.* The second sentence does not clearly manifest intention to supersede any common law or the presumption specifically. Chapter 11A previously provided that land remaining nonentered and not charged with taxes for five successive years was forfeited to the state by operation of law. While it changed the previous statutory scheme of strict forfeiture, we find nothing in the language of § 11A-3-37 establishing a clear intention by the Legislature to supersede the common law presumption at issue in this case. Therefore, we find no error in the circuit court applying the presumption in this case.

Next, Mr. Miller asserts that EQT's and Stone Hill's challenges to the 2013 Tax Deed are untimely. He argues that under West Virginia Code § 11A-3-63 (1994), the only method to set aside a tax sale deed is by filing an action under West Virginia Code §§ 11A-4-2 (1994), 11A-4-3 (2022), 11A-4-4 (2022), or 11A-4-6 (1994). Conversely, EQT and Stone Hill argue that tax sale deeds resulting from duplicate assessments are void, not voidable, and the statute of limitations periods provided in West Virginia Code §§ 11A-4-2, 11A-4-3, 11A-4-4, or 11A-4-6, only apply to voidable tax sale deeds. We agree with EQT and Stone Hill.

The SCAWV has consistently determined that there is no statutory time bar to setting aside a void deed. *Haynes v. Antero Resources Corp.,* No. 15-1203, 2016 WL 6542734, *5 (W. Va. Oct. 28, 2016 ) (memorandum decision) ("[V]oid tax sale deeds do not have a statute of limitations."); *MZRP, LLC v. Huntington Realty Corp.*, No. 35692, 2011 WL 12455342, at * 4 (W. Va. March 10, 2011) (memorandum decision ) ("While W. Va. Code § 11A-4-1, et seq., enacted a three-year statute of limitations on voidable deeds created by procedural irregularities, there is no statute of limitations regarding void deeds."); *see also Leslie Equip. Co. v. Wood Res. Co.*, 224 W. Va. 530, 543, 687 S.E.2d

---

[4] This duty was previously articulated in West Virginia Code § 11A-4-2 (repealed 1994), and West Virginia Constitution article XIII, section 6 (repealed in 1992).

109, 122 (2009) (Ketchum, J., concurring) ("Once void, always void."). No party argues that the taxes on the surface of the Subject Tract became delinquent between 1943 and 2013. Therefore, in applying the presumption that nonentered oil and gas is deemed to be assessed with the surface, there was no valid property interest in the Subject Tract to sell to Mr. Miller, and his 2013 Tax Deed was void, not voidable. Thus, the statutes of limitations of West Virginia Code §§ 11A-4-2, 11A-4-3, 11A-4-4, or 11A-4-6, do not apply to the challenges to the void 2013 Tax Deed.

Lastly, Mr. Miller argues, in the alternative, that whether the taxes paid by the surface owners of the Subject Tract ever included the severed minerals is a genuine issue of material fact, precluding summary judgment. The record before the trial court showed that Mr. Miller reported the severed minerals for assessment and was assessed taxes on the severed minerals in an amount greater than the existing assessment on the surface of the Subject Tract. EQT and Stone Hill argue that severance of title is different than severance of assessment for tax purposes. Because this case turns on the validity of the 2013 Tax Deed, the 2016 and 2017 assessments are immaterial to the determination of title in the dispute and thus do not create a genuine issue for trial. We agree with EQT and Stone Hill.

As the SCAWV has held,

An appellant must carry the burden of showing error in the judgment of which he complains. This Court will not reverse the judgment of a trial court unless error affirmatively appears from the record. Error will not be presumed, all presumptions being in favor of the correctness of the judgment.

Syl. Pt. 5, *Morgan v. Price*, 151 W. Va. 158, 150 S.E.2d 897 (1966); *see also Cobble v. Lester*, No. 24-ICA-201, 2024 WL 5201017, at *2 (W. Va. Ct. App. Dec. 23, 2024) (memorandum decision). We find that Mr. Miller did not carry his burden of showing error in the judgment below. Mr. Miller does not explain how the 2016 and 2017 assessments on his claimed interest stemming from the void 2013 Tax Deed could affect title to the one-half mineral interest at issue in this case. We reject this argument and determine that these facts raised by Mr. Miller do not establish a genuine issue of material fact that would preclude summary judgment.

For the foregoing reasons, we find no error in the circuit court's conclusions that the 2013 Tax Deed is void as a matter of law and that Mr. Miller acquired no interest in the subject oil and gas through the void 2013 Tax Deed. Accordingly, we affirm the circuit court's June 3, 2025, order.

Affirmed.

6

**ISSUED:** May 1, 2026

**CONCURRED IN BY:**

Chief Judge Daniel W. Greear
Judge Charles O. Lorensen
Judge S. Ryan White